# 11-3276-cv

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

▶▶◀◀

GUGGENHEIM CAPITAL, LLC, GUGGENHEIM PARTNERS, LLC,

*Plaintiffs-Appellees,*

*v.*

DAVID BIRNBAUM,

*Defendant-Appellant,*

*and*

DABIR INTERNATIONAL, CATARINA PIETRA TOUMEI, AKA CATARINA FREDERICK, VLADIMIR ZURAVEL, ELI PICHEL, THEODOR PARDO, JOHN DOES, 1-10,

*Defendants.*

*On Appeal from the United States District Court
for the Southern District of New York (New York City)*

## REPLY BRIEF FOR DEFENDANT-APPELLANT DAVID BIRNBAUM

Ronald D. Coleman
GOETZ FITZPATRICK LLP
*Attorneys for Defendant-Appellant
　David Birnbaum*
1 Pennsylvania Plaza, Suite 4401
New York, New York 10119
212-695-8100

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................. ii

REPLY STATEMENT OF FACTS .......................................................................1

ARGUMENT ..........................................................................................................7

I.   PLAINTIFFS' ARGUMENT THAT THE DISTRICT
     COURT ACTED WITHIN ITS DISCRETION IN
     ENTERING A DEFAULT JUDGMENT IS PREMISED
     ON THE INCORRECT LEGAL STANDARD ..............................................7

     A.   The Record Does Not Support a Finding of Willfulness ...........................7

     B.   The Record Supports the Existence of a Meritorious Defense .................9

     C.   Plaintiffs Have Not Established Prejudice ..............................................11

II.  AFFIRMING THE DEFAULT JUDGMENT IN THIS CASE
     WOULD BE AN UNDULY HARSH RESULT ............................................11

CONCLUSION .....................................................................................................14

# **TABLE OF AUTHORITIES**

**Cases**

*Cody v. Mello*,
 59 F.3d 13 (2d Cir. 1995) ................................................................................ 9

*Davis v. Musler*,
 713 F.2d 907 (2d Cir.1983) ............................................................................ 11

*Enron Oil Corp. v. Diakuhara*,
 10 F.3d 90 (2d Cir. 1993) .............................................................................. 10

*Haven Capital Management, Inc. v. Havens Advisors, LLC*,
 965 F. Supp. 528 (S.D.N.Y. 1997) .................................................................. 4

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
 676 F.3d 83 (2d Cir. 2012) ..................................................................... 12, 13

*Pecarsky v. Galaxiworld.com Ltd.*,
 249 F.3d 167 (2d Cir. 2001) ..................................................................... 7, 10

**Constitutional Provisions**

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 10

## **REPLY STATEMENT OF FACTS**

The brief of Plaintiffs-Appellees relies heavily on a number of asserted facts that are either contrary to the record or misleadingly incomplete.  Some misstatements are petty, but must be addressed.  One is Plaintiffs' astonishing assertion (Br. 4) that "[o]n February 10, 2011, the district court rejected Birnbaum's request to modify the injunction to permit him to use Plaintiff's federally registered GUGGENHEIM marks to sell financial products and services."  The February 10, 2011 Order [DE 65] says no such thing.  It states the exact opposite:  That Birnbaum sought permission to use the name Guggenheim "in connection with services **unrelated to** financial and investment products and services" because he "wishes to use these names in connection with the importation and distribution of vodka and spirits" (emphasis added).

This misrepresentation of the record by Plaintiffs may seem trivial compared to the larger issues before this Court, but it is not.  These "small lies" matter because throughout this litigation minor details have been massaged, omitted or misstated in such a way as to paint a compelling picture, but a false one. Operating much of the time against an unrepresented defendant, Plaintiffs have aligned these minor falsehoods, connecting them to just that quantum of truth required to make a lie

1

palatable, to depicted a profound global conspiracy, nefariously exploiting consumer confusion by infringing on the trademark rights of a major financial institution.

Small details matter, therefore. Plaintiffs have not been reluctant to invent them throughout this litigation—often by mixing and matching allegations or proof involving **one** defendant and simply, without any factual ground, asserting them as the conduct of **another**. What better way, then, to elicit an impression that Birnbaum is an incorrigible fraudster than to claim that, after the entry of preliminary restraints, he had the temerity to request that the injunction be "modified"—"merely" to permit the use of the Guggenheim name for the very same services Plaintiffs offer, when in fact his request was exactly the opposite?

Turning vodka and spirits into stocks and bonds is an effective technique against an impoverished, unrepresented party. And it is even more devastating when a plaintiff can arrange for the FBI to arrest that party and the U.S. Attorney to keep baseless criminal charges against him pending just long enough to ensure a civil default. Why go through the inconvenience of proving entitlement to a massive judgment when it can be obtained by default with a little outside help?

Plaintiffs' constant, but misleading, allusions to Birnbaum's unjust arrest are of substantive significance to the merits of this appeal.[1] The district court placed (and, to their discredit, Plaintiffs **still** place) great stock in that arrest as evidence of bad faith and an implied presumption of wrongdoing on Birnbaum's part. Plaintiffs' silence with respect to the dismissal of the criminal charges against him is inexcusable. But it is an understandable omission, because it kicks important assumptions, both factual and moral, out from under the district court's order.

Indeed, the district court's approach to Plaintiffs' requests for *pro bono* counsel in the two cases puts the complicating factor of the criminal case in stark relief, as it does the injustice visited on Birnbaum. Concerning the criminal case, the district court appropriately deemed Birnbaum a pauper and assigned him volunteer counsel. Despite the resources at the disposal of the federal criminal prosecution apparatus,[2] there was neither indictment nor

---

[1] The dismissal of all charges against Birnbaum took place after the record in this civil matter was closed, but it was raised in Defendant's opening brief and is not denied by Plaintiffs. Furthermore, "[t]his Court may take judicial notice of any fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 88 n. 2 (2d Cir. 2012) (acknowledging the criminal conviction of defendants appealing the denial of a stay of related civil proceedings).

[2] This included seizure of all the documents and computers belonging to Birnbaum and his wife. (Deposition Transcript dated February 1, 2011 [Dkt. No. 63-10].)

3

conviction—an outcome experienced by few unrepresented defendants charged with federal crimes.

Respecting the claims giving rise to the judgment being appealed here, however, no counsel was authorized for the same pauper facing the same exact allegations. Consequently, the Defendant was left on his own to face the litigation onslaught of a major financial institution and a major law firm, even while charges were pending.

Finally, another key misstatement of fact by Plaintiffs must be corrected.  That is their assertion that unlike in *Haven Capital Management, Inc. v. Havens Advisors, LLC*, 965 F. Supp. 528 (S.D.N.Y. 1997), "the *Haven* parties did not dispute that the defendant was using her bona fide maiden name. Here," they say, "Birnbaum has no valid basis to use the Plaintiffs' GUGGENHEIM Marks," i.e., the name Guggenheim.  This is false.  While record evidence favorable to Birnbaum is not well developed in light of the restraints under which Appellant operated, especially following his arrest, the record does contain such evidence— **evidence that is completely unrebutted.**  It comes in the form of deposition testimony given by Appellant under penalty of perjury, which is included in transcript that Plaintiffs themselves submitted as part of a motion (Deposition Transcript dated February 1, 2011 [Dkt. No. 63-7 and 63-10]) ("Tr.").  There Appellant

4

testified that his mother's name was Jeanette Guggenheim. (Tr. 48:1-18). Appellant subsequently identified his three maternal uncles as Joshua Guggenheim, Wolf Guggenheim and Eliezer Guggenheim; (*id*. 31:5-32:19.) He also repeatedly described the Guggenheims as "my family" (id. at 39:16-21); testified about his recollection of his maternal grandfather (Wilhelm) Guggenheim's philanthropic (38:23-25) and commercial (166:7-12; 167:1-15) activities in Germany as well as that of other members of his family (168:22-25).[3]

The foregoing, as well as the reference to colloquy in a transcript cited in Appellant's opening brief, is obviously admissible evidence of the factual premise of Birnbaum's defense based on his family name. It was placed before the trial court by Plaintiffs themselves. But it was ignored by the district court, seemingly concerned more with a perceived need to "press forward with this case" because it "can't delay it any further" [Tr. from April 4, 2011 hearing at 6:24 – 9:14] than the disposition of a confused, impoverished man's life and reputation.

---

[3] These transcripts also belie the claim by Plaintiffs that Birnbaum "never denied the allegations in Plaintiffs' pleading." (Br. 11.) Due to the circumstances laid out at length in Appellant's opening brief, Birnbaum never even served or filed an answer, which was not itself a basis for the default judgment against him. But during his deposition, Birnbaum explicitly denied Plaintiffs' claims against him, at length. (Tr. 183:1 – 185:19 [Dkt. No. 63-10].)

5

The fact that his mother's maiden name was Guggenheim, and that he used it, and did so in good faith, for decades is a key defense to the claims against him, set out in detail in Appellant's opening brief. It is a defense he could have made by way of a responsive pleading and, when put to his defenses, by affirmative proof amenable to evaluation on the merits. At the very least he could have placed this proof in opposition to the default motion.

And he would have —if he were not following the instructions of his criminal counsel pending the dismissal of those charges. He would have, if he had the legal help necessary to do so. He would have, if he had known what a "motion for default" was. But he **was** following those instructions; he did **not** have a lawyer; and, like almost anyone without a law degree, he did **not** know what the words "default judgment" meant.

So the opportunity to present a most fundamental defense to the claim of trademark infringement, an opportunity even to speak up and defend himself without risking imprisonment in the process, was denied to him. The choice forced on Appellant while facing an appalling and unjustified legal jeopardy was a substantive deprivation of his rights—and has resulted in an unjust outcome that this Court should reverse.

# ARGUMENT

## I. PLAINTIFFS' ARGUMENT THAT THE DISTRICT COURT ACTED WITHIN ITS DISCRETION IN ENTERING A DEFAULT JUDGMENT IS PREMISED ON THE INCORRECT LEGAL STANDARD.

Beyond the litany of exaggerated and false factual claims in Plaintiffs' opposition reply brief are crucial legal errors. Plaintiffs assert that the Court should affirm the entry of default because Birnbaum "cannot satisfy the standard for seeking relief from default" under *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170-71 (2d Cir. 2001), on the ground that Birnbaum's default was willful; that he lacks a meritorious defense; and that defendants would be prejudiced by vacatur. These assertions, as discussed below, are incorrect.

### A. The Record Does Not Support a Finding of Willfulness

*Pecarsky* requires that the facts going to the willfulness of default should be considered under all the circumstances, "resolving all doubts in favor of the party seeking relief." 249 F.3d at 172. The grounds purported to demonstrate Appellant's willfulness, set out by Plaintiffs in bullet points (Br. 13), demonstrate nothing of the sort in the full context of the facts and procedural history.

Regarding the failure to oppose the preliminary injunction motion "despite having notice of it," the fact is, as set out in the district court's

7

order of December 9, 2010 [Dkt. 13], that weeks before the injunction hearing, a temporary restraining order had already been entered *ex parte* against Birnbaum on November 22, 2010, of which he only received notice, incredibly, four days later, on November 26.[4] On December 6, 2010, the district court gave Birnbaum all of seven days (until the 13th) to respond, but personal service of that December 9th order was not even **attempted** until December 13 and was only completed a day later. [Dkt. 20] It is hardly surprising that the stunned recipients of these papers "defaulted" and the preliminary injunction issued on the 17th.

Plaintiffs claim that Birnbaum "repeatedly violated the preliminary injunction by continuing to use Plaintiff's famous GUGGENHEIM Marks to promote bogus financial services" and "continued to use Plaintiff's GUGGENHEIM Marks to try to close a multi-million dollar fuel transaction." These allegations have been extensively denied by Birnbaum [Dkt. 63-12], and are not in fact based on any direct evidence implicating him. The additional bullet points address the "defaults" by Birnbaum during

---

[4] This is acknowledged in Plaintiffs' correspondence with the district court, evidently transmitted by facsimile and *ex parte* (no indication being shown that copies were provided to any other party) on the afternoon of December 6, 2010, and rendered into a memo-endorsed order that same day by the district court. The court did not require direct service of that order on the parties. [Dkt. 12]. Based on this record, defendants, including Birnbaum, were not even advised of the briefing schedule until service of the December 9, 2010 order issued by the court three days later.

8

discovery but ignore the situation created by the criminal charges against him. (Plaintiffs' assertion that "Birnbaum cannot justify his failure to produce exculpatory evidence (to seek relief of default judgment) because he invoked his Fifth Amendment right against self incrimination" (Br. 17) is unsupported by any case citation, and understandably so.) Plaintiffs' last point, concerning Birnbaum's "failure" to oppose the default motion, has been dealt with extensively by Appellant in his submissions on this appeal. A "trial court's desire to move its calendar should not overcome its duty to do justice." *Cody v. Mello*, 59 F.3d 13, 15 (2d Cir. 1995).

Considering these facts under all the circumstances, and resolving all doubts in favor of the party seeking relief, the district court plainly erred in finding willfulness of the default here.

### B. The Record Supports the Existence of a Meritorious Defense

Plaintiffs seek to stitch the general rule that facts alleged in a pleading are deemed admitted upon default onto the analysis of whether or not Birnbaum has any meritorious defenses (Br. 15) —an exercise that would make any default invulnerable to review. Elsewhere they demand evidence for Appellant's defenses, such his defense based on use of his own family name. (Br. 16). But while ample record evidence of this point is described

9

at length in the Reply Statement of Facts above, Plaintiffs are relying on the wrong legal standard.

This is not a summary judgment motion. While a "defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense . . . [t]he test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993). Thus in *Pecarsky*, the Court determined the existence of a meritorious defense solely by considering the assertions by the defendant set out in its opposition to an earlier motion to dismiss under Fed. R. Civ. P. 12(b)(6) and finding them adequate for purposes of a motion to vacate a default. 249 F.3d at 174. The evidence of a bona fide defense here is far more robust than that relied on in *Pecarsky*.

Similarly, defendants' claims of trademark infringement, including that Birnbaum "counterfeited Plaintiffs' Marks by using the same font, type style, and distinctive purple color," are based on documents and other evidence that Plaintiffs never linked to Birnbaum himself. He testified that in the main these materials and the fanciful transactions attempted were the

10

work of the other defendants, which were largely undertaken either without his knowledge or over his objections. [Dkt. 63-12]

### C. Plaintiffs Have Not Established Prejudice

Plaintiffs confuse the "prejudice" that must be shown to resist vacatur of a default with the disadvantages of not getting a default judgment. Their cases merely stand for the proposition that they have legal claims and it is better for them if they prevail. "To establish prejudice, something more than the costs and delays inherent in prosecuting civil litigation is required." *Davis v. Musler,* 713 F.2d 907, 916 (2d Cir.1983). Given that the permanent injunction in place differs little from the preliminary restraints entered over two years ago, Plaintiffs cannot establish any cognizable prejudice that would result from this Court allowing the case to be litigated on the merits now that Birnbaum is no longer shackled by Fifth Amendment concerns.

### II. AFFIRMING THE DEFAULT JUDGMENT IN THIS CASE WOULD BE AN UNDULY HARSH RESULT.

Great deference is afforded to a district court's assessment of the proper approach toward litigant recalcitrance, contumacious conduct and docket management. But there are limits to that discretion. Appellant does not deny that there have been delays and even noncompliance emerging from situation described in these papers in the course of this litigation. But these failures were not appropriately remedied by the grant of a multimillion

11

dollar default judgment against an unrepresented party facing criminal charges.

Plaintiffs rely on the recent decision in *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83 (2d Cir. 2012) (hereinafter "*LVM*"), which confirmed the scope of discretion placed in district judges concerning stays of civil proceedings in the face of parallel criminal prosecutions. To the limited extent the *LVM* case has any relevance at all to this appeal of a default judgment, however, the factors the Court relied on in *LVM* are almost entirely absent from this situation. In fact, the *LVM*'s court's reliance on them suggests exactly the result urged by Birnbaum.

In *LVM,* a renowned purveyor of luxury goods sued a substantial importing company for trademark counterfeiting involving millions of dollars of merchandise sold through numerous entities and utilizing deceptive shipping schemes to evade U.S. Customs. *Id*. at 88. The defaulting defendants and individuals, who profited considerably from this enterprise, had the benefit of counsel at all times. The *LVM* opinion sets out the extensive evidence of widespread international counterfeiting activities, conduct that took real dollars out of the pockets of the plaintiff and threatened to continue doing so if not enjoined. Even then, the plaintiff had

12

engaged at multiple junctures in efforts to "settle the case and avoid litigation," *id.* at 94.

By contrast, the record proof of tortious conduct against Appellant is skeletal, conclusory and inferential. Yet he was not afforded the "courtesy" of a cease and desist demand from Plaintiffs before they obtained an *ex parte* temporary restraining order. Not only were there no pretrial settlement efforts, but Birnbaum's ability to defend himself was almost immediately compromised by his arrest. In contrast, in *LVM* the civil suit was filed more than a year before the defendants were indicted, giving defendants ample time to secure and mount a vigorous defense, making their subsequent requests for a stay far less sympathetic. *Id.* at 104.

Other facts demonstrate the vast factual gap between *LVM* and this appeal. In *LVM*, the evidence was clear that defendants were operating a successful worldwide counterfeit merchandise manufacturing and shipping enterprise. *Id.* at 103. Here there is no evidence of even a single successful transaction or "sale" by Appellant utilizing the GUGGENHEIM marks, or otherwise. And unlike the global counterfeit merchandise operation in *LVM*, here Plaintiffs' strained "counterfeiting" claims are based on a handful of documents of unclear origin alleged to have copied their stationery or logos.

13

More importantly, unlike *LVM*, this is not an appeal of an order denying a motion to stay. Birnbaum is appealing, rather, the entry of the most extreme sanction in litigation, a judgment of default, regarding which the standard is, as set forth in Appellant's opening brief, not nearly as deferential. For these reasons, this Court's *LVH* decision, to the extent it would support Plaintiffs' position at all, is of extremely limited application.

## CONCLUSION

For the foregoing reasons, this court should vacate the District Court's grant of default judgment for Appellant and remand this matter to that court for further proceedings.

Respectfully submitted,

/s/ Ronald D. Coleman
GOETZ FITZPATRICK, LLP
*Attorneys for Defendants-Appellants*
One Penn Plaza – Suite 4401
New York, NY  10119
rcoleman@goetzfitz.com

## **CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)  because this brief contains 3,001 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the t ype style requirem ents of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14 point font.

Respectfully submitted,

 /s/ Ronald D. Coleman
GOETZ FITZPATRICK, LLP
*Attorneys for Defendants-Appellants*
One Penn Plaza – Suite 4401
New York, NY  10119
rcoleman@goetzfitz.com